UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHRISTOPHER PELOSI,<br>    Plaintiff,<br><br>v.<br><br><br>COMMISSIONER OF SOCIAL SECURITY,<br>    Defendant. | CIVIL ACTION<br>No. 12-40111-TSH |

**ORDER**
July 30 , 2015

**HILLMAN, D.J.**

**Background**

Christopher Pelosi ("Pelosi") has brought this action pursuant to section 205(g) of the Social Security Act, 42 U.S.C. §405(g)("Act") seeking judicial review of a final decision made by the Commissioner of the Social Security Administration ("Commissioner") finding that he ceased being disabled under the Act as of March 1, 2008.  This Order addresses Pelosi's Motion To Reverse The Decision Of The Commissioner of Social Security (Docket No. 16), and Defendant's Motion To Affirm The Commissioner's Decision (Docket No. 20).

**Procedural History**

Pelosi filed for disability insurance benefits ("DIB") on April 11, 2002 (*Tr.,* at pp. 73-76)[1].  In a determination dated December 30, 2002, the Social Security Administration

---

[1] A transcript of the official record has been filed under seal with the court, (Docket No. 12)("*Tr.*")

("SSA") found Pelosi disabled as of April 1, 2002 (*Id.*, at p. 15). Pelosi was determined to have the following medically determinable impairment: hepatitis C with liver damage. (*Id.*, at p. 17). By notice dated March 16, 2008, the agency informed Pelosi that it had determined that his medical condition had improved and that as of March 1, 2008, he was no longer disabled (*Id.*, at pp. 28-30). Pelosi's request for reconsideration was denied on July 31, 2009, after a hearing before a State agency Disability Hearing Officer (*Id.*, at pp. 31-49). Thereafter, Pelosi requested a hearing before an administrative law judge ("ALJ"). The ALJ issued an unfavorable decision on December 22, 2010, finding that Pelosi's disability ceased as of March 1, 2008 (*Id.*, at pp. 12-25). The ALJ's decision became final on July 6, 2012, when the Appeals Council denied his request for review (*Id.*, at pp. 5-9).

*Standard for Entitlement to Continued Disability Insurance Benefits*

*Entitlement To Benefits*

To qualify for disability insurance benefits, a claimant must demonstrate that s/he is disabled within the meaning of the Act. The term "disability" as the defined in the Act is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A). The impairment(s) must be severe enough to prevent the claimant from performing not only his or her past work, but also any substantial gainful work existing in the national economy. 42 U.S.C. §423(d)(2)(A); 20 C.F.R 404.1560(c)(1). In making such determination, the ALJ must assess the claimant's RFC in combination with the "vocational factors, [including the claimant's] age, education, and work experience." 20 CFR § 404.1560(c)(1). Findings of fact made by the ALJ "are conclusive when supported by

substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater,* 172 F.3d 31, 35 (1st Cir. 1999).

Essentially, under the Act, benefits may be discontinued only if there is substantial evidence to support a finding: (1) that there is medical improvement related to the individual's ability to work, and (2) that the individual is now able to engage in substantial gainful activity. *See* 20 C.F.R. § 404.1594(a). "Medical improvement" is defined "as any decrease in the medical severity of [an] impairment(s), which was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [the claimant's] impairment." *Id.* § 404.1594(b)(1); *see also Rice v. Chater,* 86 F.3d 1, 2 (1st Cir. 1996). "To find medical improvement, the Commissioner must compare the prior and current medical evidence to determine whether there have been any such changes in the signs, symptoms and laboratory findings associated with the claimant's impairment." *Rice,* 86 F.3d at 2; *see also* 20 C.F.R. § 404.1594(c)(1). "Once medical improvement *has been shown,* a claimant's failure to meet a prior listing suffices to show that medical improvement *is related to ability to work,* a separate issue which is not even considered until medical improvement has been established." *Rice,* 86 F.3d at 2 n. 2 (emphasis in original); *see also* 20 C.F.R. § 404.1594(c)(2) & (3)(i). "Failure to seek treatment is not evidence of medical improvement. The regulations require actual physical improvement in a claimant's impairment, not simply an improved prognosis." *Santiago v. Barnhart*, 386 F. Supp.2d 20, 22 (D.P.R. 2005)(internal citation omitted).

*Determination By The ALJ*

In order to determine whether the claimant is suffering from a continued disability, the ALJ utilizes the following eight step sequential analysis:

(1) [Is the claimant] engaging in substantial gainful activity? If [yes] (and any applicable trial work period has been completed), we will find disability to have ended.

(2) If [no], [does the claimant] have an impairment or combination of impairments which meets or equals the severity of an impairment listed in appendix 1 … ? If [yes], [the claimant's] disability will be found to continue.

(3) If [the claimant does not have such an impairment or combination of impairments], has there been medical improvement …? If there has been medical improvement as shown by a decrease in medical severity, see step (4). If there has been no decrease in medical severity, there has been no medical improvement. (See step (5).

(4) If there has been medical improvement, [it must be] determine[d] whether it is related to [the claimant's] ability to do work …; i.e., whether or not there has been an increase in the residual functional capacity based on the impairment(s) that was present at the time of the most recent favorable medical determination. If medical improvement is not related to [the claimant's] ability to do work, see step (5). If medical improvement is related to [the claimant's] ability to do work, see step (6).

(5) If [it is] found at step (3) that there has been no medical improvement or if [it is] found at step (4) that the medical improvement is not related to [the claimant's] ability to work, … consider[ation] [must be given as to] whether any of the [two listed groups of] exceptions … apply. If none of them apply, [the claimant's] disability will be found to continue. If one of the first group of exceptions to medical improvement applies, see step (6). If an exception from the second group of exceptions to medical improvement applies, [the claimant's] disability will be found to have ended. The second group of exceptions to medical improvement may be considered at any point in this process.

(6) If medical improvement is shown to be related to [the claimant's] ability to do work or if one of the first group of exceptions to medical improvement applies, [it] will [be] determine[d] whether all [the claimant's] current impairments in combination are severe (see § 404.1521). This determination will consider all [the claimant's] current impairments and the impact of the combination of those impairments on [the claimant's] ability to function. If the residual functional capacity assessment in step (4) above shows

4

significant limitation of [the claimant's] ability to do basic work activities, see step (7). When the evidence shows that all [of the claimant's] current impairments in combination do not significantly limit [his/her] physical or mental abilities to do basic work activities, these impairments will not be considered severe in nature. If so, [the claimant] will no longer be considered to be disabled.

(7) If [the claimant's] impairment(s) is severe, . .. [his/her] current ability to do substantial gainful activity in accordance with § 404.1560 [will be assessed]. That is, [the claimant's] residual functional capacity based on all … current impairments [will be assessed] and consider[ation] [will be given as to] whether [the claimant] can still do work  … done in the past. If [the claimant] can do such work, disability will be found to have ended.

(8) If [the claimant] is not able to do work … done in the past, … consider[ation] [will be given as to] whether [the claimant] can do other work given the residual functional capacity assessment made under [ step (7)] and [the claimant's] age, education, and past work experience … . If [yes], … [the claimant's] disability has ended. If [no], … [the claimant's] disability continues.

20 C.F.R. § 404.1594.

## **Facts**

### *Summary of Pelosi's Educational and Occupational History*

Pelosi was 38 years old on March 1, 2008, *i.e.,* the date that the SSA deemed him no longer disabled. He has a high school education.  His past relevant work included employment as a sales representative.  (*Tr..*, at pp. 216, 514).   Pelosi began working in June 2007 doing inside sales; his work involved training others.  He worked for about seven months earning $11,336.00.  (*Tr.*, at pp. 17, 486-87).  Pelosi indicated that his employer made accommodations which allowed him to work.  However, neither his employer, who was contacted, nor Pelosi ever submitted evidence to substantiate his claim that accommodations were made by his employer.  (*Id.*, at p. 17, 491).

<u>*The ALJ's Findings*</u> (*See Tr.*, at pp. 15-23)

Initially, the ALJ found that the most recent favorable medical decision finding Pelosi disabled was the December 30, 2001 determination, *i.e.*, the "Comparison Point Decision" ("CPD").  At the time of the CPD, Pelosi had a medically determinable impairment (hepatitis C with liver damage), which was a listed impairment, as set forth in the Commissioner's "Listing of Impairments," 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). (*Tr.*, at pp. 16-17).

Following is a summary of the ALJ's application of the required eight step sequential analysis:

>    1. At step one, the ALJ found that Pelosi had not engaged in substantial gainful activity through March 1, 2008.  However, the ALJ did find that during the 2007 calendar year, Pelosi had performed substantial gainful activity for five to seven months and earned $11,336.00. (*Tr..*, at p. 17).
>
>    2. At step two, the ALJ found that as of March 1, 2009, Pelosi had the following medical determinable impairments: history of Hepatitis C with failed treatment; history of respiratory problems; history of fractured right ankle and clavicle; depression, anxiety; and polysubstance abuse and dependence.  The ALJ further found that since March 1, 2008, Pelosi did not have an impairment or combination of impairments that met or medically equaled the severity of any entries in the Listing of Impairments (*Id.*).
>
>    3. At step three, the ALJ found that medical improvement had occurred as of March 1, 2008 (*Id.*).  More specifically, the ALJ found that while Pelosi continued to have some decreased liver functions and continued to complaint of fatigue, the medical evidence do not reveal objective findings to support his complaints of limitation.  Additionally, the ALJ found that Pelosi continued to engage in behavior which would affect his liver function. (*Id.*).
>
>    4. At step four, the ALJ found that the medical improvement related to Pelosi's ability to work (*Id.*).  As step five did not apply, the ALJ proceeded to step six, where he found that Pelosi continued to have a severe impairment or combination of impairments as of March 1, 2008, and that those impairments as caused more than minimal limitation in his ability to perform basic work activities.  (*Id.* at pp. 17-18).  Next, the ALJ found that, as of March 1, 2008, Pelosi had the residual functional capacity ("RFC") to perform light work as

defined in 20 C.F.R. § 404.1567(b), with the following additional non-exertional limitations: "[H]e can frequently but less than constantly bend, twist, or crouch. [He] should avoid concentrated exposure to the following: dust, fumes, strong odors, and temperature or humidity extremes. The claimant can perform simple one to two step tasks. (*Id.*)

     5. At step seven, the ALJ found that as of March 1, 2008, Pelosi had the RFC to perform light work, except he can frequently, but less than constantly bend, twist or crouch.  Additionally, he should avoid dust, fumes, strong odors, and temperature or humidity extremes.  He can perform simple one to two step tasks with no more than occasional interaction it coworkers and supervisors and no interaction with the public.  In making this finding, the ALJ considered all of Pelosi's symptoms and the extent to which they can reasonably be accepted as consistent the objective medical and other evidence.  After considering all of the evidence, the ALJ determined that Pelosi's statements concerning the intensity, persistence and limiting effects of his symptoms are not credible to the extent they are inconsistent with the RFC assessment.  The ALJ set forth a detailed explanation for this finding. (*Tr.*, at pp. 19-23).  The ALJ concluded based on the medical and other evidence that this RFC assessment was supported by the medical records of  Pelosi's treating physicians. (*Id.* at pp. 22-23).  The ALJ then found that Pelosi was unable to perform past relevant work, *i.e.*, retail sales person. (*Id.,* at p. 24).

     6. At step eight, the ALJ concluded that given his age, education, work experience and RFC based on impairments presented as of March 1, 2008, he was able to perform a significant number of jobs in the national economy. (*Id.*, at pp. 24-25).

Accordingly, the ALJ found that as of March 1, 2008, Pelosi's disability had ended.

## **Discussion**

### *Court's Review Of Commissioner's Decision*

Under § 205(g) of the Act, this Court may affirm, modify, or reverse the Commissioner's decision, with or without remanding the case for a rehearing. *See* 42 U.S.C. § 405(g). The ALJ's finding on any fact shall be conclusive if supported by substantial evidence and must be upheld "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion," even if the record could justify a different conclusion.

*Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981); *see also Evangelista v. Sec'y of Health & Human Servs.*, 826 F.2d 136, 144 (1st Cir. 1987).

In applying the "substantial evidence" standard, the Court must bear in mind that it is the province of the ALJ, not the Court, to find facts, decide issues of credibility, draw inferences from the record, and resolve conflicts in the evidence. *Irlanda Ortiz v. Sec'y of Health & Human Servs.,,* 955 F.2d 765, 769. Ultimately, the Court may affirm, modify, or reverse the Commissioner's decision, with or without remanding the cause for a rehearing, 42 U.S.C §405(g)[2], but reversal is warranted only if the ALJ committed a legal or factual error in evaluating a claim or if the record contains no "evidence rationally adequate.... to justify the conclusion." *Roman-Roman v. Commissioner of Social Security*, 114. Fed. App'x. 410, (1st Cir. 2004); *see also Manso-Pizarro v. Sec'y of Health and Human Services*, 76 F. 3d. 15 (1st Cir. 1996).

### *The Parties' Positions*

Pelosi asserts that the ALJ's review pursuant to the "trial work period" was improperly conducted and contravenes the purpose of the trial work period rule by punishing him for attempting to go back to work. The Commissioner argues that the ALJ's decision must be affirmed because the ALJ determined in step one that Pelosi had *not* engaged in substantial gainful activity through March 1, 2008. That is, the ALJ did not stop his analysis at step one, rather he proceeded through the entire eight step sequential analyses and concluded that Pelosi's

---

[2] Section 405(g) provides that "[t]he [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."

disability had ceased based on a finding that his impairment had improved to the point where he had an RFC to perform other work in the national economy.

*Whether the Commissioner's Decision Should be Affirmed*

Pelosi asserts that because he informed the Commissioner that he was attempting to go back to work, the Commissioner undertook a review of entitlement to disability benefits. He argues that the subsequent termination of his disability benefits violated the plain meaning of the "trial work period" rule. The gist of his argument is that the Commissioner should not have undertaken a review of his entitlement to benefits because he had not engaged in substantial gainful activity for the requisite nine months, *i.e.*, Pelosi's employment efforts should not have triggered a review because he had not performed nine months of services (consecutively or not) during a sixty month period.

I agree with the Commissioner that Pelosi's argument misses the mark. A "trial work period" is a period of up to nine months during which a disabled individual may work without loss of benefits. See 42 U.S.C. § 422(c). The period of trial work ends on the earlier of " (A) the ninth month, in any period of 60 consecutive months, in which the individual renders services (whether or not such nine months are consecutive); *or* (B) the month in which his disability … ceases … ." *Id.* at 422(c)(4) (emphasis added).  In his step one analysis, the ALJ stated that Pelosi had engaged in substantial gainful activity for a five to seven month period—a factual finding that Pelosi disputes. However, whether this finding is supported by the record (it is) is irrelevant because the ALJ *did not find for purposes of step one of the sequential analysis* that Pelosi had engaged in substantial gainful activity—on the contrary, the ALJ's express finding

was that *for purposes of step one*, Pelosi had *not* engaged in substantial gainful activity.[3] Accordingly, the ALJ proceeded to steps 2-8 of the sequential analysis. Pelosi does not challenge the ALJ's findings which form the basis of his conclusion that as of March 1, 2008, he (Pelosi) was no longer disabled, *i.e.*, that as of March 1, 2008, he had experienced medical improvement, that such medical improvement was related to his ability to work, that he had the RFC to perform light work (with limitations) and that based on his age, education, work experience and RFC, he was able to perform a significant number of jobs in the national economy. I will note that Pelosi's decision not to challenge those findings is understandable. The ALJ's factual findings are supported by the medical and other evidence in the record[4] and his analysis was both comprehensive and thoughtful. Additionally, in making that determination, the ALJ did not rely on any work in which Pelosi had engaged during the trial work period. *See Tumminaro v. Astrue*, 671 F.3d 629 (7th Cir. 2011)(During rolling trial work period, ALJ cannot consider work being performed as evidence claimant is no longer disabled). Simply, put there is substantial evidence in the record to support the ALJ's finding that as of March 1, 2008, Pelosi was no longer disabled.

As to Pelosi's argument that the Commissioner erred by instituting a review of his claim before the end of the trial work period, I find his argument somewhat perplexing. The Commissioner is charged with periodically reviewing a claimant's entitlement to benefits. 20

---

[3] As noted above, if the ALJ finds at step one that a claimant has engaged in substantial gainful activity for nine months (consecutive or not) during a sixty month period, then the claimant is deemed no longer disabled and his/her benefits are terminated and the ALJ need not proceed any farther in the sequential analysis. Although not stated explicitly, the only reasonable inference is that the ALJ recognized that because he had not found that Pelosi had engaged in substantial gainful activity for *nine* months prior to March 1, 2008, Pelosi's disability had not ended for purposes of step one.

[4] I have not included detailed factual findings regarding Pelosi's medical records which contain a significant amount of personal information, nor have I discussed his medical conditions in any depth. Given the posture of this case, I do not find it necessary or prudent to do so. Suffice to say that having reviewed those records in depth, I find that the ALJ's findings are amply supported.

C.F.R. §404.1594. Pelosi had begun receiving disability benefits effective April 2002. The Commissioner was entitled to review that eligibility periodically, regardless of whether he attempted to return to the work force. Therefore, the fact that the Commissioner's review may have been triggered by the fact that the Commissioner had become aware that Pelosi had attempted to return to gainful employment does not undermine the legality of the review.

Pelosi asserts that his position is supported by the applicable regulation which provides, in his words, that: "[d]uring a trial work period, a beneficiary receiving Social Security disability benefits may test his or her ability to work and still be considered disabled. We do not consider services performed during the trial work period as showing that the disability has ended until services have been performed in at least 9 months (not necessarily consecutive) in a rolling 60 month period." *Mem. Of L. In Sup. Of Pl's Mot. To Reverse The Dec. Of The Comm. Of The Soc. Sec. Admin.* (Docket No. 17), at pp. 12-13. Not surprisingly, Pelosi has not cited to any case law supporting his contention that this language support a finding that the Commissioner *cannot review* a claimant's eligibility for benefits until s/he has engaged in substantial gainful activity for at least nine months during the trial work period.

Moreover, the statute and regulations do not support Pelosi's strained interpretation which would toll a review of a claimant's eligibility for up to five years should the claimant make *any* effort to return to the work force, so long as s/he does not work for nine months. Let me explain. Taking Pelosi's interpretation to its logical conclusion, if he attempted to work for a few weeks beginning March 1, 2005 but made no further effort to return to work, the Commissioner still could not review his eligibility for disability benefits until March 1, 2010—because only then looking back over the prior sixty month period, would the Commissioner be able to make a determination that he had engaged in substantial gainful activity for nine months

11

during the trial work period. Under Pelosi's reading, this would be the case even where, as in the instant case, the claimant has experienced a medical improvement in his condition which would render him ineligible for further benefits. Obviously, this would not be the result Congress intended. Furthermore, it contradicts the express language of the regulation, which Pelosi has inexplicably failed to cite:

> (e) When the trial work period begins and ends. The trial work period begins with the month in with the month in which you become entitled to disability insurance benefits … It ends with the close of whichever of the following calendar months is *earliest:*
>
> ….
>
> (3) the month in which new evidence, other than evidence relating to any work you did during the trial work period, show that you are not disabled, even though you have not worked a full 9 months. *We may find that your disability has ended at any time during the trial work period if the medical or other evidence show that you are no longer disabled … .*

20 C.F.R. § 404.1592 (e)(3)(emphasis added); *see also* 42 U.S.C. §422(c)(4)(B); *Tumminaro*, 671 F.3d at 633 (During rolling trial work period, ALJ cannot consider work being performed as evidence claimant is no longer disabled, *but may rely on other evidence to reach that conclusion*).[5]

For the reasons set forth above, I find that there is substantial evidence in the record to support the Commissioner's decision to terminate Pelosi's disability benefits as of March 1, 2008. Accordingly, the Commissioner's decision is affirmed.

---

[5] I will presume that Pelosi's counsel did not intentionally intend to mislead the Court by failing to cite the above provision or address it in his argument.

**Conclusion**

For the foregoing reasons,

The Motion To Reverse The Decision Of The Commissioner of Social Security (Docket No. 16) is *denied*, and Defendant's Motion To Affirm The Commissioner's Decision (Docket No. 20) is *allowed*.

/s/  Timothy S. Hillman
TIMOTHY S. HILLMAN
DISTRICT JUDGE